IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PETER SHELBO, | : | |
| Plaintiff, | : | 1:15-cv-0344 |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| JOHN WETZEL, *et al.*, | : | |
| Defendants. | : | |

## MEMORANDUM

### February 16, 2017

Plaintiff, Peter Shelbo ("Shelbo" or "Plaintiff"), a Pennsylvania state inmate who, at all times relevant, was incarcerated at the State Correctional Institution at Mahanoy (SCI-Mahanoy), Frackville, Pennsylvania, initially filed this civil rights complaint pursuant to 42 U.S.C. § 1983, on February 6, 2015, in the United States District Court for the Eastern District of Pennsylvania. (Docs. 1-3). The matter was received in this Court on February 25, 2015, *via* a February 18, 2015 Order of Transfer. (Docs. 2, 4). Named as Defendants are the following individuals: John Wetzel ("Wetzel"), Secretary of the Pennsylvania Department of Corrections ("DOC"); John Kerestes, Superintendent of SCI-Mahanoy; Security Captain Sorber[1] ("Sorber"); and Jane Hinman ("Hinman"), Grievance Coordinator and Superintendent's Assistant at SCI-Mahanoy.

---

[1] This Defendant is incorrectly identified in Plaintiff's complaint as "Sorba." (Doc. 35, p. 1, n .1).

Presently pending is Defendants' motion (Doc. 34) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiff filed a timely opposition brief, in which he concedes that the claims against Defendants Wetzel and Hinman are subject to dismissal based on lack of personal involvement in the alleged underlying unconstitutional conduct.  (Doc. 37, p. 1).  He also states that he is suing remaining Defendants Kerestes and Sorber in their individual capacity alone, not their official capacity.  And, he "agrees" that his Fifth and Fourteenth Amendment due process claims are subject to dismissal.  Shelbo then indicates that "[i]n light of these admissions, what remains is the central question of this case: Did plaintiff adequately state a claim of retaliation against the two remaining defendants, John Kerestes and Captain Sorber?"  (*Id.* at 2).  This claim will be addressed in the context of Defendants' motion to dismiss and, for the reasons set forth below, Defendants' motion will be granted.

## I.   <u>STANDARD OF REVIEW</u>

In rendering a decision on a motion to dismiss, a court should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).  The court must accept as true the factual allegations in the complaint and draw all reasonable inferences

from them in the light most favorable to the plaintiff. *Innis v. Wilson*, 334 F.

App'x , 454, 456 (3d Cir. 2009) (citing *Phillips v. County of Allegheny*, 515 F.3d

224, 233 (3d Cir. 2008)).  A district court ruling on a motion to dismiss generally

"relies on the complaint, attached exhibits, and matters of public record." *Sands v.*

*McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

However, "the tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice.").  "First, the

factual and legal elements of a claim should be separated." *Fowler v. UPMC*

*Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  Second, the court must then

determine whether the complaint states a plausible claim for relief, which is "a

context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Id.* at 211 (citing *Iqbal*, 556 U.S. at 679); *see also*

28 U.S.C. § 1915A(b) (directing the court to identify cognizable claims and to

dismiss any portion of the complaint that fails to state a claim).  "[W]here the well-

pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the

pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679; FED. R. CIV. P. 8(a)(2).

## II.   <u>ALLEGATIONS OF THE COMPLAINT</u>

In a declaration attached to his complaint**,** Shelbo avers that during an April 26, 2014 phone conversation with a family member he discussed the following:

(1)  The possibility of hiring a lawyer.

(2)  Possibility of contacting the State Police to bring charges of official oppression against Superintendent John Kerestes at S.C.I. Mahanoy.

(3) That it was my understanding Supt. Kerestes was ran [sic] out of S.C.I. Coal Township for having to [sic] may grievances and law suits filed against him.

(4) That he micro manages [sic] the prison and his staff doesn't even fart without his permission.

(5) That he does retaliate against both staff and inmates who challenge or question his authority.

(Doc. 1, p. 13).

He alleges that two days later, on April 28, 2014, "Security" transferred him from general population to the Restricted Housing Unit ("RHU") in retaliation for statements [he] made on the phone …." (*Id.* at 3).  On the same date he received an "Other Report" which advised him as follows:  "You are being placed in AC status pending an investigation by SCI Mahanoy Security Office.  This is in accordance with DC ADM 802 VI A 1F  'The inmate has been charged with, or is under investigation for a violation of facility rules and there is a need for increased

control pending disposition of charges or completion of the investigation.'  This is not disciplinary action."  (*Id.* at 3, 11, 16).  He remained in the RHU until May 20, 2014, when the DOC transferred him to the State Correctional Institution at Huntingdon ("SCI-Huntingdon").  (*Id.* at 12).

He specifically claims First Amendment violations based on Kerestes's decisions to transfer him to the RHU and SCI-Huntingdon, allegedly in retaliation for his expression of his intentions to hire a lawyer and to contact the state police. (*Id*. at 10).  He also alleges that "security placed [him] in the R.H.U. under investigation for unfounded alligations [sic]."  (*Id.* at 3).

## III.   <u>DISCUSSION</u>

Shelbo brings this civil rights action pursuant to 42 U.S.C. § 1983.  Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials.  *See* 42 U.S.C. § 1983.  The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

*Id*.; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).  To state a claim under §1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

While mindful that the *pro se* plaintiff may not be held to a heightened burden of proof, the court should approach prisoner claims of retaliation "with skepticism and particular care" due to the "near inevitability" that prisoners will take exception with the decisions of prison officials and "the ease with which claims of retaliation may be fabricated."  *See Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir.2001); *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir.1996); *Woods*, 60 F.3d at 1166; *Colon*, 58 F.3d at 873; *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir.1983).

The First Amendment offers protection for a wide variety of expressive activities.  *See* U.S. Const. amend I.  These rights are lessened, but not extinguished in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct.  *See Turner v. Safley*, 482 U.S. 78, 89 (1987).  Retaliation for expressive activities can infringe upon an individual's rights under the First Amendment.  *See Allah v. Seiverling*,

229 F.3d 220, 224-25 (3d Cir. 2000).  To prevail on a retaliation claim under 42

U.S.C. § 1983, plaintiff must demonstrate:  (1) that he was engaged in

constitutionally protected activity; (2) that he suffered an "adverse action" by

government officials; and (3) that there is "a causal link between the exercise of his

constitutional rights and the adverse action taken against him."  Rauser v. Horn,

241 F.3d 330 (3d Cir. 2001) (quoting Allah, 229 F.3d at 225).

With regard to the protected conduct prong, "[f]ree speech is not absolute at

all times and under all circumstances."  *Chaplinsky v. State of New Hampshire*,

315 U.S. 568, 571-72 (1942).  "[T]ypes of speech that are categorically

unprotected include: fighting words, *Chaplinsky v. New Hampshire*, 315 U.S. 568,

62 S.Ct. 766, 86 L.Ed. 1031 (1942), threats, *Watts v. United States*, 394 U.S. 705,

89 S.Ct. 1399, 22 L.Ed.2d 664 (1969), speech that imminently incites illegal

activity, *Brandenburg v. Ohio*, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430

(1969), and obscenity, *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d

419 (1973)."  *U.S. v. Stevens*, No. 05-2497, 2008 WL 2779529 (3d Cir. July 18,

2008).  As a general rule, a prisoner's First Amendment rights are retained to the

extent they are not inconsistent with his inmate status or with the legitimate

penological objectives of the corrections system.  *Pell v. Procunier*, 417 U.S. 817,

822 (1974); *see also  Jones v. North Carolina Dep't of Corr.* 433 U.S. 119, 132

(1977) (holding that a prisoner's exercise of his First Amendment freedoms may be curtailed if such speech poses "the likelihood of disruption to prison order or stability, or otherwise interferes with the legitimate penological objectives of the prison environment.").  Thus, an inmate's First Amendment rights do not include the right to debate staff orders prior to obeying them, disregard prison rules, or engage in activities that may incite a disturbance. *See, e.g., Durkin v. Taylor*, 444 F. Supp. 879 (D.C.Va. 1977) (prisoner telling prison staff he was tired of "chicken shit" rules was not protected speech).

Shelbo's utterances, that he was entertaining the "possibility of contacting the state police to bring charges of official oppression against Superintendent John Kererestes," that it is his understanding that Kerestes was forced to leave SCI-Coal Township for having too many grievances and law suits filed against him, that he micromanages the prison and "his staff doesn't even fart without his permission," and that he "retaliate[s] against both staff and inmates who challenge or question his authority," pose a likelihood of disruption to prison order or stability and thus, do not constitute constitutionally protected speech.  (Doc. 3,p. 13).  His failure to establish that he was engaged in constitutionally protected activity is fatal to his retaliation claim.  Thus, the remaining retaliation claim against Defendants Kerestes and Sorber will be dismissed.

8

## IV.    **<u>CONCLUSION</u>**

Based on the foregoing, Defendants' motion (Doc. 34) to dismiss the

complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) will be granted.

An appropriate Order will issue.